IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-00569-RBJ

CENTURA HEALTH CORPORATION,
PORTERCARE ADVENTIST HEALTH SYSTEM, d/b/a Littleton Adventist Hospital,

    Plaintiffs,

v.

DEBRA A. AGNEW,
MYR GROUP, INC.,
MYR GROUP HEALTH PLAN,
ELAP SERVICES, LLC, and
PROFESSIONAL BENEFIT ADMINSTRATORS, INC.,

    Defendants.

---

## ORDER ON MOTION TO REMAND

---

    This case was originally filed in the Arapahoe County District Court (Case No. 2017CV31173). Defendants MYR Group, Inc., MYR Group Health Plan, and ELAP Services, LLP removed the case to this Court based on federal question jurisdiction. ECF No. 3 at 3. Defendants argue that plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq. Id.* The case is before the Court on plaintiffs Centura Health Corporation's and Portercare Adventist Health System's (collectively, the "Hospital") motion to remand. ECF No. 27. For the reasons stated herein, the motion is GRANTED.

## I. BACKGROUND

This case stems from a dispute over a patient's obligation to pay a medical bill. The patient, Debra Agnew, underwent a "bladder sling" surgery at the Littleton Adventist Hospital in 2012. ECF No. 3 at 5. Before undergoing surgery Ms. Agnew signed a "patient-hospital contract" in which she acknowledged full financial responsibility for, and agreed to pay, all of the charges from the Hospital that were not otherwise paid by her health insurance or other payor. *Id.* at 8. The hospital charged Ms. Agnew $21,166.70 for the surgery. *Id.* at 12. The Hospital determined this amount based on its "Chargemaster," a comprehensive listing of the hospital's prices for all of its billable services and supplies. *Id.* Ms. Agnew's insurance plan paid part of the bill, leaving an outstanding balance of $15,987.80. *Id.*

Ms. Agnew is insured by defendant MYR Group Health Plan ("the Plan"), which is an ERISA Group Welfare Plan. ECF No. 1-6 at 2. The Plan is established and maintained by Ms. Agnew's husband's employer, which is a subsidiary company of defendant MYR Group. *Id.* Defendant Professional Benefit Administrators Incorporation ("PBA") is a third-party administrator for the Plan. *Id.* at 3. Defendant ELAP is a named fiduciary to the Plan and serves as its designated decision maker. *Id.*

The Hospital asserts that ELAP "caused Ms. Agnew and many other patients not to pay the full amount of their hospital bills" despite the patients' being contractually obligated to pay those amounts. ECF No. 3 at 4. After Ms. Agnew failed to pay the outstanding balance on her bill, the Hospital alleges that ELAP "caused Ms. Agnew to file" a suit in Arapahoe District Court against the Hospital to avoid paying her outstanding bill. *Id.* The parties entered mediation and the case was dismissed without prejudice. *Id.* at 14. However, after Ms. Agnew continued

refusing to pay her outstanding bill, the Hospital filed the present lawsuit in Arapahoe County District Court. *Id.*

In its initial complaint, the Hospital sued only Ms. Agnew. However, the Hospital added ELAP, MYR, the Plan, and PBA as defendants when it filed the First Amended Complaint on January 31, 2018. ECF No. 3. In this operative complaint, the Hospital raises two claims against Ms. Agnew alone: (1) breach of contract and (2) claim on account stated. *Id.* at 17–18. The Hospital's third claim for declaratory judgment applies to all defendants. *Id.* at 14.

After the Hospital filed its suit, defendants agreed to pay the full amount claimed under the patient-hospital contract, including the outstanding balance, prejudgment interest, and reasonable attorneys' fees and costs. *Id.* Nonetheless, the Hospital maintains that ELAP, PBA, MYR, and the Plan continue to (1) cause other patients with identical contracts to refuse to pay the amounts due; (2) assert that they are entitled to unilaterally dictate what is due under substantially identical contracts; (3) assert that contracts like Ms. Agnew's are invalid and unenforceable; and (4) force the Hospital to litigate the validity of its contracts while ultimately agreeing to pay the full amount due to avoid binding judicial determinations. *Id.* at 15.

As a result, the Hospital seeks a declaratory judgment against all defendants construing the validity of the patient-hospital contract and declaring that (1) the contracts incorporate Chargemaster rates; (2) a patient's promise to pay all charges refers to the hospital's prices as set forth in its Chargemaster; (3) the phrase, "all charges of the hospital" refers to the Chargemaster, not to an open or undefined term; and (4) the terms of Ms. Agnew's patient-hospital contract and all other substantially identical contracts require the patient to pay all charges not otherwise paid by health insurance or other payor. *Id.* at 15–17 (citing C.R.S. § 13-51-101, *et seq.*).

Defendants MYR, ELAP, and the Plan filed their Notice of Removal on March 9, 2018. ECF No. 1 at 1; ECF No. 1-5 at 2. In their Notice of Removal these defendants invoked federal question jurisdiction because "Plaintiffs' claims are completely preempted by the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. §§ 1001, *et seq.*" ECF No. 1 at 3. Defendants Agnew and PBA did not join in the Notice, nor did they file a consent to the removal. The Hospital responded with the pending motion to remand on April 9, 2018. ECF No. 27. The Hospital contends that defendants' Notice of Removal is procedurally defective because not all defendants consented to removal, and that the Court should remand because it does not have removal jurisdiction. *Id.* On April 26, 2018, the same day that defendants responded in opposition to the motion to remand, Ms. Agnew and PBA filed their consent to removing the case to federal court. ECF No. 33. at 6–7.

## II. STANDARD OF REVIEW

A civil action filed in a state court may be removed to federal court if the dispute "aris[es] under" federal law. *See* 28 U.S.C. §§ 1331, 1441(a). "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "[R]emoval statutes[] are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1095 (10th Cir. 2005). The removing party bears the burden of establishing federal jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

## III. ANALYSIS

The Hospital raises both a procedural and a substantive reason the case should be remanded to state court pursuant to 28 U.S.C. § 1447(c). It contends that (a) defendants did not unanimously consent to removal and (b) removal jurisdiction does not exist. ECF No. 27 at 1.

The Hospital also seeks attorneys' fees and costs on the grounds that there was not an objectively reasonable basis for removal. *Id.*

### A. <u>Lack of Unanimous Consent to Removal</u>.

28 U.S.C. § 1446 outlines the procedure for removing a civil action from state to federal court. In key part, this section provides that a "defendant or defendants desiring to remove any civil action from a State court" shall file notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(a)–(b)(1). Additionally, "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."[1] *Id.* at § 1446(b)(2)(A). "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." *Id.* at § 1446(b)(2)(B). Finally, "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." *Id.* at § 1446(b)(2)(C).

A removal that does not comply with the express statutory requirements for removal "'can fairly be said to render the removal 'defective' and justify a remand.'" *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999)). Because removal is entirely a statutory right, the relevant procedures must be followed. *Cohen v. Hoard,* 696 F.Supp. 564, 565 (D.Kan.1988). "The failure of all defendants to consent to removal will result in remand." *Padilla v. Am. Modern Home Ins. Co.*, 282 F. Supp. 3d 1234, 1254–55 (D.N.M. 2017).

---

[1] 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants" to the United States district court.

5

In this case the Hospital first filed its state complaint only against defendant Ms. Agnew. The Hospital then filed an amended complaint on January 31, 2018 in which it added MYR, the Plan, ELAP, and PBA as defendants. ECF No. 3 at 2. MYR and PBA were served the amended complaint on February 7, 2018, and ELAP was served on February 8, 2018.[2] ECF No. 34-1 at 2; ECF No. 34-2 at 2; ECF No. 34-3 at 2. Defendants MYR, the Plan, and ELAP filed their Notice of Removal on March 9, 2018. ECF No. 1 at 1; ECF No. 1-5 at 2. In their Notice of Removal they contended that the case was based upon federal question jurisdiction because "Plaintiffs' claims are completely preempted by the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. §§ 1001, *et seq.*" ECF No. 1 at 3. Defendants Agnew and PBA did not join in the Notice, nor did they file a consent to the removal.

The Hospital argues that the failure of the defendants to unanimously consent to the removal of this case merits remand. Defendants, however, argue that they cured this defect by filing a notice of consent for the two missing defendants concurrent with their response to the motion to remand on April 26, 2018. ECF No. 33 at 7. However, I do not agree that this filing remedied the procedural error.

Defendants point out that the statute does not provide a date by which all defendants "must join in or consent to the removal of the action." *Id.* (citing 28 U.S.C. § 1446(b)(2)(A)). In contrast, they note that the statute provides a clear deadline to file a notice of removal of thirty days after being served with the complaint. *Id.* (citing 28 U.S.C. § 1446(b)(2)(B)). Defendants point to this difference in the statutory sections as evidence that Congress did not intend to create a deadline in which all parties must join in or consent to the removal of an action. *Id.* Thus, in

---

[2] The Plan was not served, but it executed a waiver of service on March 2, 2018. ECF No. 1 at 1 n.1; ECF No. 1-4 at 2.

6

their case, they urge the Court to find that the notice of consent filed on April 26, 2018 is sufficient, and should not be deemed untimely. *Id.* at 6–7.

It is true that a federal court's discretion to retain an action when there are procedural defects in the notice of removal is a matter of unsettled law. *Day Imaging, Inc. v. Color Labs Enters., L.L.C.*, No. 09-cv-02123-DME-MEH, 2009 WL 4884274, at *2 (D. Colo. Dec. 11, 2009). In particular, "whether remand is required because of a defect in obtaining consent that is cured only after the removal period has expired is not entirely certain." *Id.* However, courts have observed that to give any meaning to the procedural requirement that all defendants consent to or join a notice to remove, such consent or joinder must at the very least be filed before the plaintiff moves to remand.

In *Padilla*, 282 F. Supp. 3d at 1239, for example, the federal District Court for the District of New Mexico found that "while all defendants must join in or consent to removal, they need not do so within thirty days after they receive a copy of the initial pleading." In *Padilla* several defendants were served with state complaints. *Id.* at 1240. One of the defendants removed the case to federal court, and two co-defendants consented to the removal contemporaneously. *Id.* The remaining defendant, however, failed to consent concurrent with the notice of removal, but it did so 37 days after it had been served with the complaint. *Id.* at 1241. The court concluded that this consent to removal was not procedurally defective since there is no statutory requirement that consent be filed within a given timeframe. *Id.* at 1265.

However, the *Padilla* court's finding does not give defendants *carte blanche* to file their consent to removal at any time. Instead, the court observed that "defendants face a de facto time limit for consent to removal" because a motion to remand a case must be made within thirty days after the notice of removal is filed. *Id.* at 1265. Thus, "[d]efendants must either assert that they

do not consent to removal within those thirty days or they are treated as if they had consented insofar as their lack of consent can no longer cause a court to remand the case." *Id.* This language should not be read to imply that courts will treat defendants who fail to join or consent to removal "as if they had consented" in general, but instead this rule applies in the more limited context where the plaintiff fails to file a motion to remand within the thirty day deadline. Because plaintiffs bear the burden of remanding for procedural violations, they may waive defendants' noncompliance with procedures by failing to timely remand.

In this case the Hospital did not waive defendants' noncompliance with procedure. Instead, the Hospital properly noted that the defendants had failed to obtain unanimous consent to the removal of the case, and as such the Hospital seeks remand. ECF No. 27. If the procedural requirement to obtain consent from all defendants is to have any meaning, it must be the case that if all defendants have failed to consent to removal by the time a motion to remand is filed, the removal "'can fairly be said to render the removal 'defective' and justify a remand.'" *Huffman*, 194 F.3d at 1077 (internal citation omitted).

Moreover, even assuming there is flexibility in the time period within which defendants may consent to the removal of the case to federal court, this case far exceeds any such reasonable time period. In *Glover v. W.R. Grace & Co., Inc.*, 773 F. Supp. 964, 965 (E.D. Tex. 1991), for example, one of the defendants filed its consent to remove 34 days after it had been served, or just four days after the thirty-day period to remove a case. *Id.* The court observed that "[t]he thirty day time limit for removal, however, is a formal requirement that may be waived, it is not a jurisdictional barrier." *Id.* (citing *Powers v. Chesapeake & O. Ry.*, 169 U.S. 92, 99 (1898)). The court "decline[d] to elevate form over function," and thus denied the plaintiffs' motion to remand. *Id.* This is not such a case. Instead, as noted, Ms. Agnew and PBA filed their consent

to remove on April 26, 2018, which is nearly three months after the First Amended Complaint was filed, nearly two months after the initial notice of removal was filed by the other defendants on March 9, and three weeks after the motion to remand was filed. ECF Nos. 3, 27. No explanation is provided for this delay. To waive this error as merely a de minimis procedural violation would render meaningless the requirement that all defendants consent to removal.

Thus, I find that though there might not be a definitive statutory deadline within which defendants must obtain unanimous consent to remove a case, the de facto deadline must be sometime before the end of the thirty day period in which plaintiffs may seek to remand the case. Because defendants far exceeded that deadline in this case, their error was more than de minimis and may not be excused. This error thus constitutes grounds for remand.

### B. Removal Jurisdiction.

Although I am satisfied that defendants' procedural error mandates remand, I will also address the Hospital's contention that the Court does not have removal jurisdiction, as this contention is relevant for the Hospital's request for attorneys' fees. ECF No. 27.

Typically a federal court has original jurisdiction to hear a dispute only if a question of federal law appears on the face of the well-pleaded complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). Thus, a defense based on the preemptive effect of a federal law usually will not provide a basis for removal. *See id.* There is, however, a corollary to the well-pleaded complaint rule: the complete preemption doctrine. Under this doctrine, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983).

Defendants contend in defense of their removing the case to federal court that the Hospital's claims are completely preempted by ERISA, and that as a result the Court has removal jurisdiction. ECF No. 33 at 8. The Hospital counters that because its declaratory judgment claim is not subject to complete ERISA preemption, removal jurisdiction does not exist, and the case must be remanded to state court. ECF No. 27 at 7.

The United States Supreme Court has articulated the following test for determining ERISA complete preemption:

> Where the individual is entitled to coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (internal citations omitted).

Thus, to decide whether a plaintiff's claim is completely preempted, courts must determine (1) whether the plaintiff could have brought its claim under § 502(a)(1)(B), and (2) whether no other legal duty supports the plaintiff's claims. *Vetanze v. NFL Players Ins. Plan*, No. 11-cv-2734-RBJ-KLM, 2011 WL 6813182, at *2 (D. Colo. Dec. 11, 2011). In this case, I find that defendants have failed to establish that the Hospital could have brought its claim under § 502(a)(1)(B).

Section 502(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a). To show that the Hospital could have brought its claim under this section of ERISA, defendants must show that (1) the Hospital is a plan participant or beneficiary or

otherwise has standing to sue and (2) the Hospital is seeking relief available under § 502(a)(1)(B). *See Vetanze*, 2011 WL 6813182, at *2 (citing *Memorial Health Sys. v. Aetna Health*, 730 F. Supp. 2d 1289, 1294 (D. Colo. 2010)); *see also In re Managed Care Litig. v. Aetna Health, Inc.*, No. 00-1334-MD, 2009 WL 855967, at *4 (S.D.Fla. March 30, 2009). While the defendants have made a sufficient showing under the first prong that the Hospital has standing to sue, they have failed to establish pursuant to the second prong that the Hospital is seeking relief available under this section.

   1. The Hospital Has Standing To Sue.

First, the parties agree that the Hospital is not a plan participant or beneficiary. The Plan defines a "participant" as an employee or former employee who is eligible to receive benefits from an employee benefit plan. ECF No. 27 at 9–10. A "beneficiary" is a person designated by a participant to receive benefits under a plan. *Id.* "Health care providers generally are not considered to be beneficiaries or participants, and therefore they lack standing to bring a claim under § 502(a)(1)(B)." *Vetanze*, 2011 WL 6813182, at *2. "However, a health care provider may acquire standing to sue by obtaining assignments of participants' or beneficiaries' rights to receive payments." *Id.*

In this case, the Hospital's patient-hospital contract with Ms. Agnew contains a provision entitled "Assignment for Direct Payment." *See* ECF No. 3 at 7. This provision, to be signed by patients, states that "I authorize and direct payment of any insurance or healthcare benefits otherwise payable to me for health care services of goods be made directly to the Hospital and my physicians . . . I understand that I am financially responsible to the Hospital or my physicians for charges not covered or paid pursuant to this authorization." *Id.* As such, I will assume that

this provision is a valid assignment of Ms. Agnew's rights to receive payments such that defendants have demonstrated that the Hospital has standing to sue under section 502.

The Hospital claims that it is not *acting* "as the assignee of Agnew." *See* ECF No. 27 at 10. Nonetheless, this Court has previously found that even where a plaintiff chooses not to bring his claim in his status as an assignee, that plaintiff had derivative standing given his "admitted assignments for care and services." *Vetanze*, 2011 WL 6813182, at *3. ERISA's complete preemption doctrine would be rendered ineffectual if a party's choice not to bring claims under ERISA despite its right to do so ended this inquiry. *Id.* Similarly in this case, the Hospital cannot avoid its standing to sue as an assignee by the way it files its complaint. Thus, I am satisfied that the Hospital has standing to sue as an assignee.

2. The Hospital Is Not Seeking Relief Available Under § 502(a)(1)(B).

Nonetheless, defendants have failed to satisfy the second prong of the *Vetanze* test by establishing that the Hospital is seeking relief available under § 502(a)(1)(B). As noted, this statutory section allows an action to be brought "to recover benefits due to [a participant or beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a). The Hospital's request for relief in its first amended complaint does not seek any of the relief available under 29 U.S.C. § 1132 (a).

The Hospital seeks a declaration that the prices it charges in its patient-hospital contracts are based on the Chargemaster, and are not open price terms. ECF No. 3 at 17. Additionally, the Hospital seeks a declaration that pursuant to its patient-hospital contracts, patients are required to pay all the charges that are not otherwise paid by their health insurance. *Id.* From these demands it is plain that the Hospital does not seek plan benefits in the form of "money from

12

MYR, the Plan, ELAP or PBA." ECF No. 27 at 10; *cf Vetanze*, 2011 WL 6813182, at *3 (the plaintiff medical provider was seeking benefits under the terms of the Plan where he was seeking "the reasonable value of services rendered to various insureds of the Defendant"). Here, the Hospital does not seek payment from the defendants pursuant to the terms of the Plan.

Nevertheless, defendants argue that the Hospital's requests for declaratory relief seek "to clarify [patients'] rights to future benefits under the terms of the plan," thereby fitting into the type of action covered by section 502(a)(1)(B). ECF No. 33 at 10–11 (citing 29 U.S.C. §1132(a)). I disagree. The Hospital's request for declaratory relief does not attempt to clarify the absolute or relative amount of hospital charges that will be covered by the Plan versus the participant. If it did, the requested relief *would* clarify patients' rights to future benefits, since that information would explain how much patients could expect to have covered by the Plan. Instead, the request for relief seeks only to reinforce that patients are obligated to pay whatever remains of their bill after the Plan has paid its portion, regardless of what amount or percentage that portion is. As such, this request for relief does not fall into section 502.

I am not persuaded by defendants' citation of *In re Managed Care Litigation v. Aetna Health, Inc.*, No. 00-1334-MD, 2009 WL 855967, at *2 (S.D. Fla. March 30, 2009) in support of their argument that the Hospital attempts to "clarify rights to future benefits under the terms of the plan." ECF No. 33 at 10–11. The defendants emphasize that "ERISA governs not only what a Plan affirmatively pays for benefits but also a Plan's *determinations and related communications regarding what a Plan member is obligated to pay under a Plan*." *Id.* at 11 (emphasis in original). In *Managed Care*, a medical provider sued two health insurers for tortious interference with contract and negligent misrepresentations. 2009 WL 855967, at *2. According to the *Managed Care* complaint, the insurers reimbursed the provider but then

13

miscalculated and misinformed the insured patients about their remaining financial obligations. *Id.* In particular, the defendants were alleged to have calculated the amounts patients owed "in accordance with their own 'reduced' rates" rather than "based on the actual amount charged by the provider." *Id.* Although the provider contended that it was not challenging the defendants' calculations of their financial obligations, but instead was merely seeking to enjoin defendants' further misrepresentations that patients owed "anything less than the balance of the amount charged," the court concluded that the plaintiff's claim was subject to complete preemption under ERISA section 502. *Id.*

While *Managed Care* is similar to this case, it can be distinguished. The defendants in this case have allegedly challenged the validity of the patient-hospital contracts and instructed Ms. Agnew and other patients not to pay any of their remaining balance, rather than misinforming them about the amount they owed based on defendants' own calculations. ECF No. 3 at 13–15; *cf. Managed Care*, 2009 WL 855967, at *7 (noting that "the enforcement provision under Section 502(1) allows a beneficiary to seek clarification of whether the financial obligation as calculated by the insurer is correct under the plan"). Thus, the alleged interference by defendants in this case has little to do with the calculation of patients' obligation under the Plan, which is the flip-side of the calculation of the benefits to which they are entitled. Instead, the alleged interference is related to misinforming the patients about their obligation to pay at all, which arises from the patient-hospital contract rather than under the Plan. ECF No. 3 at 17. From the Hospital's perspective, it does not matter how the Plan calculates its portion of the bill versus the patient's portion of the bill—which calculation *would* be related to the patient's benefits or obligations under the Plan—so long as the total bill is covered by some combination of the two.

Thus, even assuming the Hospital is standing in Ms. Agnew's shoes as an assignee, the actual allegations and claim for relief in the complaint do not reveal any request for a calculation of her financial obligation or the benefits she will receive, but merely a clarification that she does, in fact, owe whatever remains after that obligation is calculated by her insurer. *See Vetanze*, 2011 WL 6813182, at *1, *3 (although the plaintiff was suing as an assignee, the Court assessed the nature of the "claims brought by plaintiff," which were for "the reasonable value of services rendered to various insureds"). Therefore, I find that the Hospital's claims do not seek a form of relief available under section 502(a)(1)(B). As a result, I need not reach the second prong of the test. *See Vetanze*, 2011 WL 6813182, at *2 (assessing whether no other legal duty supports the plaintiff's claims). I am satisfied that the Court lacks removal jurisdiction because Hospital's claim is not completely preempted by ERISA. Remand is thus appropriate.

In addition to seeking remand, the Hospital also seeks its attorneys' fees and costs associated with the removal pursuant to 28 U.S.C. § 1447(c). ECF No. 27 at 12. This section provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The United States Supreme Court has noted that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Despite my finding that this case should be remanded to state court, I do not find that defendants' reasons for removing the case were objectively unreasonable. "[T]here is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious

cases." *Id.* at 140. As a result, I decline plaintiffs' request for attorneys' fees and costs associated with the removal of the case.

**ORDER**

Because the defendants failed to obtain unanimous consent by all defendants to remove the case, and because the Court does not have removal jurisdiction, the motion to remand is GRANTED. Plaintiffs' motion for attorneys' fees and costs associated with the removal of the case is DENIED.

DATED this 18th day of July, 2018.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge